IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Corey Michael Wickham, | ) | |
| | ) | |
| Petitioner, | ) | **ORDER DENYING SECTION 2254** |
| | ) | **PETITION FOR HABEAS CORPUS** |
| | ) | |
| vs. | ) | Case No. 1:23-cv-057 |
| | ) | |
| Joseph Joyce, Warden, | ) | |
| North Dakota State Penitentiary, | ) | |
| | ) | |
| Respondent. | ) | |

Before the Court is a Petition for Writ of Habeas Corpus made by Petitioner, Corey Michael Wickham and a second Motion to Dismiss made by Respondent, Joseph Joyce. For the reasons discussed herein, Respondent's Motion to Dismiss is **GRANTED** and the Petition is **DENIED**.

I. **PROCEDURAL HISTORY**

Wickham filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. No. 2). Joyce responded on July 26, 2023 and submitted a Motion to Dismiss the Petition on March 5, 2024. (Doc. Nos. 8, 15). Joyce asserted Wickham had not exhausted the state court post-conviction process for one of his claimed Brady violations. (Doc. No. 15 at 1; Doc No. 15-1 at 3-4). Wickham conceded one Brady claim had not been exhausted. (Doc. No. 19 at 1-2). Because Wickham had begun the process to adjudicate that claim in state court, this matter was stayed pending completion of the state proceeding. (Doc. No. 21).

On July 28, 2024, Wickham provided a status report indicating the state court denied his post-conviction relief application on June 26, 2024. (Doc. No. 22). Joyce did not submit a status report. The Court denied Joyce's motion to dismiss and lifted the stay on September 26, 2024. (Doc. No. 23). A status conference was held with the parties on January 6, 2025. On March 7,

2025, Joyce submitted a second Motion to Dismiss supported by a brief and exhibits. (Doc. Nos. 30, 31 et. al). Wickham has not responded to the instant motion and the time to do so has passed.

## II.   BACKGROUND

The North Dakota Supreme Court summarized the background of Wickham's prosecution as follows:

> Wickham was found guilty of two counts of gross sexual imposition. He appealed his conviction and [the North Dakota Supreme Court] affirmed in State v. Wickham, 2020 ND 25, 938 N.W.2d 141. Wickham then filed an application for postconviction relief, arguing that his conviction was obtained in violation of his Sixth Amendment right to effective assistance of counsel because his trial counsel failed to object to a State witness's comment on Wickham's invocation of his right to counsel. Because the district judge who presided over Wickham's trial had retired, an evidentiary hearing on his postconviction application was held in front of a different judge. Testimony was heard from Wickham's trial counsel at the hearing. The court found Wickham satisfied the Strickland test and granted Wickham's application for postconviction relief.

Wickham v. North Dakota, 974 N.W.2d 646, 648 (N.D. 2022).

The state appealed the district court's postconviction decision arguing that Wickham's counsel's failure to object to the investigating officer's testimony commenting on Wickham's post-arrest invocation of counsel did not amount to ineffective assistance of counsel. Id. The North Dakota Supreme Court agreed and reversed the district court's order granting Wickham a new trial.

Wickham's federal petition for habeas corpus raises three grounds for relief. He alleges his imprisonment violates due process because the State withheld exculpatory evidence, his Fifth Amendment right to remain silent and his Sixth Amendment right to counsel were violated. (Doc. No. 2 at 2). Respondent argues Wickham's petition must be denied because certain claims are procedurally defaulted, and the North Dakota Supreme Court's decision was not unreasonable. (Doc. No. 31).

### III.  GOVERNING LAW

####   A.  Scope of Review

Under 28 U.S.C. § 2254(a), a federal court may review state-court criminal proceedings to determine whether a person is being held in custody in violation of the United States Constitution or other federal law. When a state court has adjudicated the constitutional claim on the merits, a federal court's review is limited by 28 U.S.C. § 2254(d). The federal court may grant relief ***only*** if it determines the state court's decision is (1) directly contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) based on an unreasonable determination of the facts based on the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d) (emphasis added); see generally Harrington v. Richter, 562 U.S. 86, 97-100 (2011); Williams v. Taylor, 529 U.S. 362, 399-413 (2000). This is a highly deferential standard of review, often referred to as "AEDPA deference," because it was enacted by the Antiterrorism and Effective Death Penalty Act of 1996. E.g., Pederson v. Fabian, 491 F.3d 816, 824-25 (8th Cir. 2007); see generally Renico v. Lett, 559 U.S. 766, 773 n.1 (2010).

Recently, the United States Supreme Court held that AEDPA's conditions for § 2254 relief did not erode "the equitable discretion traditionally invested in federal courts." Brown v. Davenport, 596 U.S. 118, 134 (2022). This means that "a petitioner who prevails under AEDPA must still . . . persuade a federal habeas court that 'law and justice require' relief." Id. To do so, the Supreme Court requires a petitioner to satisfy the conditions of AEDPA ***and*** the standard announced in Brecht v. Abrahamson, 507 U.S. 619 (1993). Id. at 134. In Brecht, the Supreme Court concluded "a state prisoner should not receive federal 'habeas relief based on trial error unless' he can show the error had a 'substantial and injurious effect or influence' on the verdict." Id. at 133 (quoting Brecht, 507 U.S. at 637). Applying the direction in Brown, a federal habeas

court may not grant relief unless it has "'grave doubt'—not absolute certainty—about whether the trial error affected the verdict's outcome." Id. at 135-36; see also Yang v. Roy, 743 F.3d 622, 626 (8th Cir. 2014) ("A 'substantial and injurious effect' occurs when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict.") (quoting Toua Hong Chang v. Minn., 521 F.3d 828, 832 (8th Cir. 2008) (in turn quoting O'Neal v. McAninch, 513 U.S. 432, 435 1995)).

The reasons for the limited review are ones of federalism and comity that arise because state courts have primary responsibility for ensuring compliance with federal law in state criminal proceedings. See, e.g., Richter, 562 U.S. at 103. The even more strenuous requirements clarified in Brown are based on the States' "powerful and legitimate interest in punishing the guilty" and limiting federal intrusion on state sovereignty by granting habeas relief to state prisoners. Brown, 596 U.S. at 132 (internal quotation marks and citations omitted). In sum, the Supreme Court explained that "a federal court must *deny* relief to a state habeas petitioner who fails to satisfy either this Court's equitable precedents or AEDPA. But to *grant* relief, a court must find that the petitioner has cleared both tests." Id. at 134.

     **B.**     **Exhaustion**

Section 2254(b)(1) provides that a writ for habeas corpus may only be granted if the applicant has exhausted the remedies in state court; there is no available state corrective process; or the circumstances render the state process ineffective to protect the applicant's rights. 28 U.S.C. § 2254(b)(1). To exhaust a claim, the petitioner must fairly present his federal claim to the appropriate state courts in the manner required by state law, thereby "afford[ing] the state courts a meaningful opportunity to consider allegations of legal error." Vasquez v. Hillery, 474 U.S. 254, 257 (1986); Chatman v. Sayler, No. 1:20-CV-047, 2022 WL 4182248, at *14 (D.N.D. Sept. 13, 2022) (explaining that the petitioner "must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established appellate review process.") (citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)).

"To provide the state with the necessary 'opportunity,' the prisoner must 'fairly present' his claim *in each appropriate state court (including a state supreme court with powers of discretionary review),* thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (emphasis added). A failure to exhaust remedies in accordance with state procedures results in a procedural default of the claim. Coleman v. Thompson, 501 U.S. 722, 735, n.1 (1991) (explaining that "if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] . . . there is a procedural default for purposes of federal habeas").

## IV. DISCUSSION

### A. Brady Violations

Wickham asserts the state committed two Brady violations during his prosecution: one involves the alleged incomplete disclosure of text messages between the victim and her friend; and the other involves a potential source of secondary DNA evidence identified on the victim's underwear.

#### i. Text Messages

In his first application for state post-conviction relief, Wickham alleged the state committed a Brady violation by failing to provide certain text messages between the victim and her friend. The dispute centered around paper copies of the text messages that were difficult to read and a potentially blank CD that was supposed to contain discovery materials, including the text messages. After conducting an evidentiary hearing, the state court concluded no Brady violation

occurred. The state court, however, found defense counsel had been ineffective during trial relating to testimony by the investigating officer regarding Wickham's assertion of counsel.[1]

The state successfully appealed the district court's post-conviction ruling that trial counsel was ineffective to the North Dakota Supreme Court. Wickham v. North Dakota, 974 N.W.2d 646, 650-51 (N.D. 2022). Wickham did not cross-appeal the district court's denial of the Brady claim. Joyce argues Wickham's instant federal habeas claim for a Brady violation relating to the text messages is procedurally defaulted because he failed to exhaust the state review process. (Doc. No. 31 at 3-4). The Court agrees.

A procedural default occurs when a petitioner fails to present a claim in state court and a state court remedy is no longer available. O'Sullivan, 526 U.S. at 848; Coleman, 501 U.S. at 749-50. A procedural default can occur at any point during state court review: at trial, on direct appeal, or during post-conviction proceedings. Kilmartin v. Kemna, 253 F.3d 1087, 1088 (8th Cir. 2001). A petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Chatman, 2022 WL 4182248, at *14. (citing O'Sullivan, 526 U.S. at 845). One full opportunity includes an appeal to the North Dakota Supreme Court, the state's only appellate court. See id.

Wickham did not appeal the post-conviction denial of this Brady claim to the North Dakota Supreme Court. He has therefore failed to complete the state procedures and cannot do so now because of the state's res judicata statute. See N.D. Cent. Code § 29-32.1-12. The state's res judicata law is regularly enforced by North Dakota courts. E.g., Tweed v. North Dakota, 807 N.W.2d 599, 602 (N.D. 2011); Steen v. North Dakota, 736 N.W.2d 457, 462 (N.D. 2007). Thus, this Brady claim is procedurally defaulted. See Woodford v. Ngo, 548 U.S. 81, 92-93 (2006)

---

[1] The claim of ineffective assistance of counsel is addressed further below.

(explaining if a petitioner failed to raise claims before the state court in accordance with state procedural requirements and those claims are barred from state court review, the claims are considered "technically exhausted," but generally barred from review by a "procedural default").

Though there are limited exceptions to avoid procedural default, such as "cause and prejudice" and "actual innocence," Wickham does not make a case for either. See McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) (stating "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or expiration of the statute of limitations."); Coleman, 501 U.S. at 750 (explicitly adopting the "cause and prejudice" and "fundamental miscarriage of justice" exceptions for habeas claims procedurally defaulted in state court and later asserted on federal habeas review); Thomas v. Payne, 960 F.3d 466, 471 (8th Cir. 2020) (observing that only in limited circumstances where a prisoner can demonstrate cause and actual prejudice or a fundamental miscarriage of justice, may the court consider a procedurally defaulted claim). As such, this claim may not be addressed by the Court. See 28 U.S.C. § 2254(b)(1)(A).

### ii. DNA Evidence

Wickham's second Brady claim, related to a potential source for secondary DNA evidence on the victim's underwear, suffers from the same flaw. Though the Court stayed this matter so Wickham could adjudicate that claim through the state post-conviction application process, Wickham only completed the district court level. He did not appeal the district court's dismissal to the North Dakota Supreme Court. In his status report, Wickham stated he would not appeal even though he was not satisfied with the decision. (Doc. No. 22). Because Wickham did not give the state courts one full opportunity to resolve this issue by following the established appellate review process, this claim is procedurally defaulted. Chatman, 2022 WL 4182248, at *14.

In addition, the gist of Wickham's argument is that the State violated Brady by not disclosing information that was developed *after* the district court ordered a new trial. Wickham seems to argue the information should have been disclosed prior to the first trial, which is illogical. Wickham did not receive a new trial because the North Dakota Supreme Court reversed the district court order. Wickham's Brady argument on this matter is without merit.

B.  **Fifth and Sixth Amendment Claims**

Wickham's Fifth Amendment claim involves a Doyle violation.[2] In Doyle v. Ohio, 426 U.S. 610 (1976), the Supreme Court held "the Constitution prohibits the state from using silence to impeach a defendant's testimony at a later trial after he has invoked his post-Miranda right to remain silent." Ervin v. Bowersox, 892 F.3d 979, 983 (8th Cir. 2018). The rule in Doyle has been expanded to a defendant's request for counsel. Wainwright v. Greenfield, 474 U.S. 284, 295 n.13 (1986); Fields v. Leapley, 30 F.3d 986, 990-91 (8th Cir. 1994) (concluding defendant's statement that "I won't talk to you about that without an attorney" was protected under both Miranda and Doyle).

A Doyle error is considered a constitutional violation that is characterized as "trial error," not a structural defect in the trial proceeding. Brecht, 507 U.S. at 629. When a trial error occurs during the presentation of a case, the error "may . . . be quantitatively assessed in the context of other evidence presented in order to determine the effect it had on the trial." Id. (internal punctuation omitted). "[T]he standard for determining whether habeas relief must be granted is whether the Doyle error "had substantial and injurious effect or influence in determining the jury's

---

[2] The Fifth Amendment protection against self-incrimination is applicable to the states through the Fourteenth Amendment. Maryland v. Shatzer, 559 U.S. 98, 103 (2010).

verdict." Id. at 623. "Under this standard habeas petitioners . . . are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Id. at 637.

During trial, the investigating detective testified about his initial encounter with Wickham:

> It was very brief. Basically, I told him that he was under arrest. The patrolman made contact with Mrs. Wickham, the driver, first and then Mr. Wickham was in the passenger's seat. And then by the time I got up there, I had told Mr. Wickham to step out of the vehicle, which he complied. I told him that he was under arrest. He asked for what. I explained. And then at that time he was brought back to his vehicle. During that process, no information was obtained that was pertinent to this case or evidentiary value or exculpatory. ***He basically, in summary, stated that he would like to speak with a lawyer or have a lawyer.*** So at that time anything relevant to this case was never discussed.

Wickham 974 N.W.2d at 649 (emphasis added).

Wickham's attorney failed to object and did not request a curative instruction or a mistrial. During deliberations, the jury asked to hear the detective's testimony regarding his interactions with Wickham and the court allowed his testimony to be read back to the jury, including Wickham's comment asking to speak with a lawyer. Id. Wickham was initially successful on an ineffective assistance of counsel claim on post-conviction review before the district court, but the North Dakota Supreme Court reversed. Id. at 649-650. Assuming this was an improper comment on Wickham's post-arrest silence, the North Dakota Supreme Court reviewed the Doyle violation in the context of a Sixth Amendment ineffective assistance of counsel claim. Id. at 648 (citing Strickland v. Washington, 466 U.S. 668 (1994)).

The state supreme court used the following factors to determine whether Strickland prejudice had been established with respect to a Doyle violation:

1. The use to which the prosecution puts the post arrest silence.

2. Who elected to pursue the line of questioning.

3. The quantum of other evidence indicative of guilt.

9

  4. The intensity and frequency of the reference.

  5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions.

Id. at 650. The district court had not considered those factors and had applied a subjective, rather than objective, standard to determine whether trial counsel's failure to object to the testimony was prejudicial. Id. In other words, when it evaluated the probability of a different result under Strickland's prejudice prong, the district court considered whether it would have granted a new trial under the circumstances. Id. The North Dakota Supreme Court found reversible error in the analysis of Strickland's prejudice prong based on those failings. Id. The state supreme court further found the district court erred by underestimating the quantum of evidence indicative of Wickham's guilt when contrasted with the detective's isolated comment about Wickham wanting to speak with a lawyer. Id. at 651. The court held it was "left with a definite and firm conviction the district court was mistaken in finding the trial counsel's failure to object raises a reasonable probability of a different result." Id. Accordingly, the district court's grant of a new trial was reversed.

To obtain post-conviction relief from the federal court, Wickham faces a heavy task under AEDPA. Wickham must demonstrate the North Dakota Supreme Court's decision is (1) directly contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) based on an unreasonable determination of the facts based on the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d). To show that a state court's decision was unreasonable under § 2254(d)(1) requires a petitioner to "persuade a federal court that no 'fairminded juris[t]' could reach the state court's conclusion" under the Supreme Court's precedents. Brown, 596 U.S. at 135. "[I]f a petitioner alleges the state court's decision 'was based on an unreasonable determination of the facts' under § 2254(d)(2), it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'"

10

Id. (quoting Brumsfield v. Cain, 576 U.S. 305, 314 (2015)). "If this standard is difficult to meet, that is because it was meant to be." Richter, 562 U.S. at 102. And, in addition to satisfying AEDPA, a federal court must itself have "grave doubt" about the petitioner's verdict to grant relief. Brown, 596 U.S. at 135-36 (citing Brecht).

The North Dakota Supreme Court examined the Doyle violation in the context of a Sixth Amendment ineffective assistance of counsel claim due to his trial attorney's failure to object or request a mistrial. To succeed on an ineffective-assistance-of-counsel claim, a petitioner must demonstrate that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010) (citations omitted). Counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

For federal courts reviewing state proceedings, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable." Richter, 562 U.S. at 101. "This is different from asking whether defense counsel's performance fell below Strickland's standard." Id. To grant relief, a federal habeas court cannot simply disagree with a state court but must find the state court's adjudication objectively unreasonable. Lockyer v. Andrade, 538 U.S. 63, 75 (2003). When an ineffective assistance claim has been addressed by the state court, habeas review is "doubly deferential." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (citing Cullen v. Pinholster, 563 U.S. 170, 202 (2011) ("Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review.").

The court examines the ultimate legal conclusion reached by the state court, "not merely the statement of reasons explaining [its] decision." Id. "[W]here there is no 'conspicuous

11

misapplication of Supreme Court precedent' that makes the state court's decision 'contrary to' clearly established law, the proper question is whether there is 'any reasonable argument' that the state court's judgment is consistent with Strickland." Id. at 831-32 (internal citations omitted). "If the state court reasonably could have concluded that [the petitioner] was not prejudiced by counsel's actions, then federal review under AEDPA is at an end." Id. at 832 (internal quotation marks omitted).

The North Dakota Supreme Court concluded the district court's analysis of the Strickland prejudice prong was erroneous because it failed to consider the appropriate factors to determine whether the Doyle violation was prejudicial. Wickham, 974 N.W.2d at 650. The court noted it had refused to grant a new trial in similar cases when the improper comments on a defendant's silence were "few and brief," when the "State did not refer to [defendant's] silence at any other time during the trial or in closing arguments," or when "there is 'ample evidence' from the entire record indicative of guilt notwithstanding the improper comment[.]" Id. (internal quotation marks omitted). Finally, the court observed that Strickland's prejudice prong is not satisfied if there is no "reasonable probability that the comments contributed to the verdict[.]" Id.

Applying these precepts, the state supreme court found the district court's grant of a new trial erroneous, explaining:

> Here, although the improper comment was made by a State witness, the State did not elicit the statement about Wickham's invocation of counsel. Instead, the witness included the comment in a lengthy narrative during which the improper comment was made in passing. Further, only one statement was made about Wickham's post-arrest invocation of his right to counsel. The record demonstrates that the State did not follow up or elicit more testimony regarding the detective's comment, nor did the State refer to his invocation of counsel at any other time during the trial or in closing arguments.
>
> Additionally, we conclude that the court underestimated the quantum of other evidence indicative of guilt. The court found that because the jury was struggling to reach a unanimous verdict before Detective Lahr's testimony was read

back to the jury, "the Court has to assume" it was the jury hearing the improper comment for a second time that led it to reach a verdict. This finding is clearly erroneous. This was a three-day jury trial during which the jury heard testimony from eight State witnesses. Detective Lahr's testimony spanned over 60 pages of the trial transcript. The improper comment was made near the end of Detective Lahr's direct examination. The record reflects that all of Detective Lahr's testimony was read back to the jury, other than his testimony establishing his qualifications. The jury also heard testimony from the victim describing the details of the assault, heard testimony from a medical examiner that the victim's injuries were consistent with forced penetration, and heard from three other witnesses that DNA matching Wickham's Y chromosomal profile was found in the victim's underpants. Therefore, it was clearly erroneous to find this isolated comment, without further elaboration and no reference in the State's argument, contributed to the jury's verdict. We are left with a definite and firm conviction the district court was mistaken in finding the trial counsel's failure to object raises a reasonable probability of a different result.

Id. at 650-51.

Applying the "doubly deferential" standard required of AEDPA and Strickland, this Court concludes Wickham has failed to demonstrate the North Dakota Supreme Court's conclusion was unreasonable. To establish Strickland prejudice in the context of a jury trial, a defendant must prove there is a reasonable probability that the result of the proceeding would have been different but for counsel's errors. Strickland, 466 U.S. at 694. Under Strickland's prejudice standard, "[t]he likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112.

Here, it was not unreasonable for the North Dakota Supreme Court to conclude Wickham failed to show Strickland prejudice by counsel's failure to object to the detective's testimony. The court's decision was supported by several good reasons that have support in the record. The court specifically found that the comment was isolated and occurred during a lengthy narrative. Wickham, 974 N.W.2d at 651. The comment was not highlighted by the prosecution or addressed any other time during the trial or in closing arguments. Id. The court further noted the quantum of evidence supporting the verdict, including testimony from the victim, testimony from a medical examiner that her injuries were consistent with forced penetration, and DNA evidence consistent

13

with Wickham's Y chromosomal pattern found in her underwear. Id. The court held it was clearly erroneous to conclude the detective's comment contributed to the jury's verdict in light of the evidence and circumstances. Therefore, the court, in essence, held trial counsel's failure to object did not "raise[ ] a reasonable probability of a different result." Id. This court cannot conclude that no fairminded jurist could agree with the North Dakota Supreme Court's decision. Thus, habeas relief is not warranted. Taylor v. Kelley, 825 F.3d 466, 470 (8th Cir. 2016) ("[I]f fairminded jurists could agree with the state court's decision regarding prejudice, we must affirm.").

Additionally, the North Dakota Supreme Court's analysis was consistent with the Supreme Court's analysis of a Doyle error in Brecht. There, the Supreme Court considered that the prosecution's references to petitioner's post-Miranda silence were infrequent, comprising less than two pages of a 900-page trial transcript. Brecht, 507 U.S. at 639. The Court further observed that the prosecution had permissibly referenced petitioner's pre-Miranda silence extensively, so that the few comments on his post-Miranda silence were cumulative. Id. Finally, the Court considered the weight of the evidence establishing petitioner's guilt. Id. Based on those factors, the Court concluded the "Doyle error that occurred at . . . trial did not 'substantially influence' the jury's verdict." Id. (punctuation altered). The factors identified by the North Dakota Supreme Court for review of the Doyle error in Wickham's case are similar to, if not more demanding than, those used by the United States Supreme Court.

Wickham has not satisfied the AEDPA standard for habeas relief because the North Dakota Supreme Court's decision was not directly contrary to, or an unreasonable application of, United States Supreme Court precedent, or (2) based on an unreasonable determination of the facts based on the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d). Additionally, this Court further observes that, based on the state-court record, it does not harbor grave doubt

about Wickham's guilty verdict. See Brown, 596 U.S. at 134, 136 (holding to grant relief, a state habeas petitioner must satisfy both the Supreme Court's equitable precedents and AEDPA).

## V.   CONCLUSION

The Court has carefully reviewed the entire record, the parties' filings, and the relevant case law. For the reasons set forth above, Wickham's Petition Under 28 U.S.C. Section 2254 for Writ of Habeas Corpus fails to warrant relief under AEDPA of the Supreme Court's equitable precedents. Accordingly, the Petition Under 28 U.S.C. Section 2254 for Writ of Habeas Corpus (Doc. No. 2) is **DENIED** and Respondent's Motion to Dismiss (Doc. 30) is **GRANTED**.

It is further **ORDERED**:

1.   The Court finds that any appeal would be frivolous, could not be taken in good faith, and may not be taken *in forma pauperis*;

2.   Based upon the entire record before the Court, dismissal of the petition is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings. Therefore, a certificate of appealability will not be issued by this Court. See Tiedeman v. Benson, 122 F.3d 518, 520-22 (8th Cir. 1997) (finding that a district court possesses the authority to issue certificates of appealability under Section 2253(c)). If the petitioner desires further review of his petition, he may request the issuance of a certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with Tiedeman v. Benson, 122 F.3d 518, 520-22 (8th Cir. 1997).

**IT IS SO ORDERED.**

Dated this 23rd day of April, 2025.

> */s/ Clare R. Hochhalter*
> Clare R. Hochhalter, Magistrate Judge
> United States District Court